# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

CIVIL ACTION NO.: 4:08CV-116-M

RUTH R. SALMON, et al.                                                                                                          PLAINTIFFS

v.

OLD NATIONAL BANK d/b/a/ OLD NATIONAL TRUST               DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion by the plaintiffs, Ruth R. Salmon, Dr. Lucy S. Crain, Mary S. Templeton, Sue Anne Salmon,[1] Dr. James L. Salmon, Jr., and Dr. Thaddeus R. Salmon, for a preliminary injunction [DN 1 Ex. 1 and DN 71]. Fully briefed, this motion is ripe for decision. Because the plaintiffs have failed to show irreparable harm, the plaintiffs' motion is **DENIED**.

## I. BACKGROUND

The plaintiffs, as adult beneficiaries of an inter vivos revocable trust, filed this action alleging that Old National Bank ("ONB"), as trustee of the trust, breached certain fiduciary duties owed to trust beneficiaries under Kentucky law. In particular, the plaintiffs allege that ONB, among other things, failed to invest the trust funds like a prudent investor and otherwise took actions that were not in the best interests of the beneficiaries. Based upon these allegations, the plaintiffs seek to remove ONB as trustee of the trust and seek to surcharge ONB for any losses it caused the beneficiaries.

---

[1] Sue Ann Salmon died on January 13, 2010.

In the plaintiffs' motion, they seek an order from the Court that would prevent ONB from using trust funds to pay for its defense of this action. They contend that under Kentucky law, a trustee is required to obtain court permission before taking any action regarding the trust in which the trustee has a conflict of interest. See KRS 386.820(2)[2]; Wiggins v. PNC Bank, Ky, Inc., 988 S.W.2d 498, 500 (Ky. Ct. App. 1998). Here, they contend that ONB, by being required to defend its actions as trustee, has a conflict of interest and failed to obtain court approval prior to using trust funds to pay its attorney's fees. They insist that these funds could better be used supporting the beneficiaries. ONB, on the other hand, argues that there is no conflict of interest, or that court approval is otherwise not required under the circumstances.

## II. DISCUSSION

A preliminary injunction is an extraordinary remedy that is generally used to preserve the status quo between the parties pending a final determination of the merits of the action. In determining whether to issue a preliminary injunction, the Court considers four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction." Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 542 (6th Cir. 2007) (quoting Tumblebus Inc. v. Cranmer, 399 F.3d 754,

---

[2] This provision, part of Kentucky's adoption of the Uniform Trustees' Powers Act, provides: "If the duty of the trustee and his individual interest or his interest as trustee of another trust, conflict in the exercise of a trust power, the power may be exercised only by court authorization (except as provided in KRS 386.810, subsections (3)(a), (d), (f), (r), and (x)) upon petition of the trustee." KRS 386.820(2).

760 (6th Cir. 2005)). It is unnecessary for the Court to make findings regarding each factor if "fewer are dispositive of the issue." In re DeLorean Motor Co., 755 F.2d 1223, 1228 (6th Cir. 1985) (citing United States v. Sch. Dist. of Ferndale, 577 F.2d 1339, 1352 (6th Cir. 1978)).

The parties have primarily discussed whether the plaintiffs have shown a likelihood of success on the merits. The plaintiffs, generally relying upon Florida case law, argue that Florida courts have interpreted that state's version of the Uniform Trustees' Powers Act[3] to require court approval before a trustee may pay legal fees in an action against the trustee alleging trust mismanagement. See Shriner v. Dyer, 462 So. 2d 1122, 1124 (Fla. Dist. Ct. App. 1984); Bringham v. Bringham, 934 So. 2d 544, 547 (Fla. Dist. Ct. App. 2006); J.P. Morgan Trust Co., N.A. v. Siegel, 965 So. 2d 1193, 1196-97 (Fla. Dist. Ct. App. 2007). ONB, on the other hand, contends that there is no conflict of interest because a trustee is permitted to use trust funds to pay attorney's fees if it successfully defends an action for trust mismanagement. In re Gerber Trust, 323 N.W.2d 567, 570 (Mich. Ct. App. 1982) (allowing "the reimbursement of attorney fees and expenses from the trust fund where the trustee has successfully defended its own conduct") (quotation omitted). Although the plaintiffs do not disagree, they argue that the trustee must *first* successfully defend the claim and the fees sought must be reasonable.

Regardless of the merits of the plaintiffs' claim under KRS 386.820(2), they are not entitled to a preliminary injunction because they have failed to show irreparable harm. Snook v. Trust Co. of Ga. Bank of Savannah, N.A., 909 F.2d 480 (11th Cir. 1990) is instructive. There, beneficiaries of a trust brought various actions against a trustee alleging, among other

---

[3] Florida has since repealed the act.

3

things, that the trustee breached its fiduciary duties. Snook, 909 F.2d at 482. In an action before a federal district court in Georgia, the plaintiffs sought a preliminary injunction to prevent the trustee from using trust funds to pay attorney's fees during the pendency of that and other litigation against the trustee. Id. The district court denied the plaintiffs' request concluding that the plaintiffs failed to demonstrate "that the periodic payment of attorney's fees by the trustees from trust funds will irreparably injure the plaintiffs, and concluded that the ultimate question of who pays the fees of attorneys representing the parties must await the final adjudication on the merits of the case." Id. at 483 (internal quotation and markings omitted).

On appeal, the Eleventh Circuit first concluded that the plaintiffs had shown a substantial likelihood of success on the merits. Id. at 483-86. Under Georgia law and the terms of the trust instrument in question, the trustee was only permitted to use trust funds for those expenditures that were "necessary for the administration, protection or preservation of the trust estate." Id. at 484. The Eleventh Circuit held that attorney's fees used to defend a trustee in an action for trust mismanagement are not for "administration, protection or preservation of the trust estate," but rather, are for the trustee's personal defense, unless the trustee can "demonstrate[] to a court that they are not at fault and that the expenses are reasonable." Id. at 484-85. In other words, "[i]f the trustee is unsuccessful in his defense, then he is not entitled to reimbursement from trust funds for attorney's fees," and "[i]f the trustee is found to be without liability at the conclusion of the litigation, . . . then he may obtain reimbursement, provided that he demonstrates to the satisfaction of the court hearing the case that the fees were reasonably necessary and proper for the defense or protection of the trust estate." Id. at 485 (citations and

4

quotation omitted). The plaintiffs were likely to succeed on the merits because it was improper for the "trustees to charge the trust for attorney expenses before they . . . demonstrated to a court that they [were] not at fault and that the expenses [were] reasonable." Id. at 486.

Nevertheless, the Eleventh Circuit concluded that the plaintiffs were not entitled to a preliminary injunction because they failed to show irreparable harm. Id. at 486. In the Sixth Circuit, "'[a] plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages.'" Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 550 (6th Cir. 2007) (quoting Overstreet v. Lexington-Fayette Urban County Gov't, 305 F.3d 566, 578 (6th Cir. 2002)). That is, a court of equity will not step in to issue a preliminary injunction if there is "an adequate remedy at law." USACO Coal Co. v. Carbomin Energy, Inc., 689 F.2d 94, 99 (6th Cir. 1982). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90 (1974) (quotation omitted). In Snook, the Eleventh Circuit noted that there were adequate monetary remedies available at the end of the case to the plaintiff for any improper payment of attorney's fees. Snook, 909 F.2d at 486. "The trustees' failure to defend successfully against the plaintiffs' charges would conclusively demonstrate that the trust funds expended for the trustees' attorney's fees were used by the trustees for their own purposes rather than for the benefit of the trusts." Id. As a result, the trustee would be liable for the loss to the trust plus interest. Id.

5

Here, the plaintiffs argue that reimbursement at the end of the litigation should they be successful is an inadequate remedy:

> During the summer/fall of 2009, the Plaintiff, Mrs. Ruth R. Salmon, age 97, incurred a physical injury and has been confined to Ridgewood Terrace Convalescent Hospital for her physical rehabilitation. Conversely, there is more income required at this immediate time to meet the income needs of Mrs. Salmon, age 97. Mrs. Salmon is the sole life beneficiary of Trust A and also has the right to receive the income from Trust B for her needs. The express and primary purpose of her husband's creation of the Trust was to insure her living expenses be met for her life. Trust A's liquid assets are now being exhausted. Trust monies of Trust A for which Mrs. Salmon's living expenses are the primary obligation of the Trust, have, and continued to be used for another purpose by the Trustee to pay its legal expenses.

(Pls.' Mem. Supp. Prelim. Inj. at 2-3.) In their reply brief, the plaintiffs also note that the liquid assets of the trust "are quickly being compromised by the expenditure of Trust funds for ONB's legal defense." (Pls.' Reply at 13.) In addition, they suggest that "permitting ONB to enjoy the unique position in a litigation of having its litigation costs paid by the opposition, provides for an abuse of the Trustees fiduciary duty of loyalty." (Id. at 14.) Like the plaintiffs here, the plaintiffs in Snook made similar arguments. They argued that trust income was needed to pay for their living expenses because they had relatively low paying jobs. Snook, 909 F.2d at 487 (bank equipment repairman, elementary school teacher, and homemaker). They also suggested that "because the trustees are not using their own money to pay their attorney's fees, the trustees are unrestrained in their ability to expand and prolong the litigation with the plaintiffs." Id.

With respect to the first argument, the Eleventh Circuit determined that the plaintiffs failed to establish they were in immediate need of the trust income:

> The plaintiffs did not present, however, any documentation of their net worth. Even though they may have relatively low-paying jobs, the plaintiffs may have

6

significant wealth or alternative sources of income. The plaintiffs' failure to document [their] assertion of financial hardship supports a finding of no irreparable harm.

Id. With respect to the second argument, the Eleventh Circuit concluded:

The trustees undoubtedly are aware of the possibility of not prevailing in this litigation. If the trustees lose on the merits of some or all of the underlying claims, they will be required to reimburse the trusts for funds taken to finance their unsuccessful defense and to distribute those funds to the beneficiaries. Thus, the trustees' litigation expenses are constrained by the prospect that the trustees may, in fact, have to pay those expenses at the conclusion of this case.

Id. Here, the plaintiffs have also failed to provide any documentation, whether via testimony at an evidentiary hearing[4] or via affidavits, that they are under an immediate need for trust income. Further, they have failed to produce any evidence that would indicate that ONB's payment of attorney's fees from trust funds is significantly limiting the amount of income available for the beneficiaries. The only support for their argument that they are in immediate need of trust income is found within their brief in support of their motion for a preliminary injunction. However, "[e]vidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to support or oppose a motion for a preliminary injunction." 11A Wright, Miller, & Kane, Federal Practice & Procedure § 2949 (2d ed.). There is simply a lack of evidence to back up the plaintiffs' allegations of irreparable harm.[5]

---

[4] The plaintiffs withdrew their request for an evidentiary hearing stating that the issues were adequately presented in the parties' briefs [DN 93].

[5] "The failure to show irreparable harm, by itself, can justify the denial of preliminary injunctive relief without consideration of the other three factors." Essroc Cement Corp. v. CPRIN, Inc., 593 F. Supp. 2d 962, 970 (W.D. Mich. 2008) (citation omitted).

## III.  CONCLUSION

Accordingly, the motion by the plaintiffs, Ruth R. Salmon, Dr. Lucy S. Crain, Mary S. Templeton, Sue Anne Salmon, Dr. James L. Salmon, Jr., and Dr. Thaddeus R. Salmon, for a preliminary injunction [DN 1, Ex. 1 and DN 71] is **DENIED**.

cc: Counsel of Record