UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO.: 4:08CV-116-M

RUTH R. SALMON, et al.                                                            PLAINTIFFS

v.

OLD NATIONAL BANK d/b/a/ OLD NATIONAL TRUST                      DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion by the plaintiffs, Ruth R. Salmon, Dr. Lucy S. Crain, Mary S. Templeton, Dr. James L. Salmon, Jr., and Dr. Thaddeus R. Salmon, requesting that the Court reconsider [DN 122] its prior Order denying their motion for a preliminary injunction. Also before the Court is a petition by the defendant, Old National Bank d/b/a Old National Trust ("ONB"), for the sale of real estate for the support of Ruth Salmon [DN 110] and a motion by the aforementioned plaintiffs to dismiss ONB's petition [DN 124]. The Court, having granted motions to expedite the resolution of these matters and having heard oral arguments on April 2, 2010, these matters are now ripe for decision.

### I. DISCUSSION

The facts of this case are more fully set forth in the Court's prior Memorandum Opinion [DN 99] denying the plaintiffs' initial motion for a preliminary injunction. Essentially, the plaintiffs seek an order from the Court that would require ONB to reimburse the Trust for funds it has already expended defending this action and to prevent it from further using the Trust funds for that purpose.

## A. RECONSIDERATION STANDARD

The Sixth Circuit recognizes that a district court may reconsider an interlocutory order both under the common law and Federal Rule of Civil Procedure 54(b). Rodriguez v. Tenn. Laborers Health & Welfare Fund, 89 F. App'x 949, 959 (6th Cir. 2004). "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or *prevent manifest injustice*." Id. (emphasis added) (citing Reich v. Hall Holding Co., 990 F. Supp. 955, 965 (N.D. Ohio 1998)); see also United States v. Lexington-Fayette Urban County Gov't, No. 06-3 86-KSF, 2008 WL 4490200, at *1 (E.D. Ky. Oct. 2, 2008); Edmonds v. Rees, No. 3:06-CV-P301-H, 2008 WL 3820432, at *2 (W.D. Ky. Aug. 13, 2008). Because a final judgment has not been entered, the trial court may "reopen any part of a case . . . 'to afford such relief from interlocutory orders *as justice requires*.'" Id. (emphasis added) (quoting Citibank N.A. v. Fed. Deposit Ins. Corp., 857 F. Supp. 976, 981 (D.D.C. 1994)); see also Schoen v. Washington Post, 246 F.2d 670, 673 (D.C. Cir. 1957) ("so long as the court has jurisdiction over an action, it should have complete power over interlocutory orders made therein and should be able to revise them when it is 'consonant with equity' to do so.") (internal quotation omitted).

ONB argues that the plaintiffs' motion does not provide a "traditional" justification for reconsideration. It insists that all of the evidence presented by the plaintiffs in support of their motion for reconsideration was available at the time they initially sought a preliminary injunction and that the Court should not now consider that evidence. In particular, ONB argues that the Court should ignore that $103,000 has been paid to its attorneys to defend this action

because that information was made available to the beneficiaries on either monthly or quarterly statements. Additionally, ONB insists that the Court should disregard the undisputed fact that there remain very few liquid assets in the Trust. Again, ONB argues that the plaintiffs could have provided this information to the Court upon its initial motion. Regardless of whether this evidence was available to the plaintiffs at the time they initially filed their motion, and regardless of whether they should have presented the evidence to the Court, it is evidence that the Court must now consider in order to prevent manifest injustice. The Trust is in immediate need of liquid assets in order to provide support for Mrs. Salmon. Under these circumstances, it would not be "consonant with equity" for the Court to ignore this evidence simply because it was not presented to the Court upon the plaintiffs' initial motion.

### B. PRELIMINARY INJUNCTION FACTORS

A preliminary injunction is an extraordinary remedy that is generally used to preserve the status quo between the parties pending a final determination of the merits of the action. In determining whether to issue a preliminary injunction, the Court considers four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction." Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 542 (6th Cir. 2007) (quoting Tumblebus Inc. v. Cranmer, 399 F.3d 754, 760 (6th Cir. 2005)). It is unnecessary for the Court to make findings regarding each factor if "fewer are dispositive of the issue." In re DeLorean Motor Co., 755 F.2d 1223, 1228 (6th Cir.

1985) (citing United States v. Sch. Dist. of Ferndale, 577 F.2d 1339, 1352 (6th Cir. 1978)).

### 1. Strong Likelihood of Success on the Merits

ONB contends that for the plaintiffs to establish a strong likelihood of success on the merits, the plaintiffs must show that they are likely to succeed on their claim against ONB for trust mismanagement which requires the plaintiffs to establish that their claims are not barred by the statute of limitations or laches. However, allegations of trust mismanagement make up some, but not all of the claims asserted against ONB. In Count VII of their Complaint, the plaintiffs specifically assert that ONB is not entitled to be compensated for its fees out of trust funds, at least during the pendency of these proceedings. (See Compl. ¶¶ 75-76.) Like the Eleventh Circuit in Snook v. Trust Co. of Ga. Bank of Savannah, N.A., 909 F.2d 480, 483-86 (11th Cir. 1990), the Court does not judge the likelihood of success on the merits on the plaintiffs' underlying claims for trust mismanagement, but rather, "on . . . their claim that the trustees have no authority absent prior judicial authorization to use trust funds to pay their attorney's fees in the present case . . . ." Id. at 486.

On this claim, the Court finds that the plaintiffs have shown a substantial likelihood of success on the merits. It is true that "a trustee may use trust funds to pay for all expenses, including attorney's fees, that are properly incurred for the administration of the trust." Snook, 909 F.2d at 483 (citing Restatement (Second) of Trusts § 244 (1959)); KRS 386.810(3)(x) ("A trustee has the power . . . [t]o employ persons, including attorneys . . . to advise or assist the trustee in the performance of his administrative duties"). However, a claim against a trustee for trust mismanagement raises questions of the trustee's *personal liability*, see Brigham v.

4

Brigham, 934 So. 2d 544, 547 (Fla. Dist. Ct. App. 2006), and fees paid by the trustee to defend the action "have been incurred for their personal defense against charges of improper administration of the trust, and not for defense of the trust indentures themselves from attack[,]" Snook, 909 F.2d at 485; cf. 2 Kentucky Practice: Probate Practice & Procedure § 1076 ("Where a suit to surcharge the settlement is successful, the attorney fees of the personal representative in defending his settlement should not be paid out of the estate.") (citing Taylor v. Minor, 14 S.W. 544 (Ky. 1890)). Therefore, courts generally do not allow the trustee to charge attorney's fees against the trust estate before they have successfully defended those claims. Id. at 486 ("it does not appear that the settlors' intent is furthered by allowing the trustees to charge the trust for attorney expenses *before they have demonstrated to a court that they are not at fault* and that the expenses are reasonable.") (emphasis added); Wells Fargo Bank v. Superior Court, 990 P.2d 591, 599 ("a trustee . . . may recover attorney fees and costs incurred in *successfully defending* against claims by beneficiaries.") (emphasis added). "The better practice may be for a trustee to seek reimbursement after any litigation with beneficiaries concludes, initially retaining separate counsel with personal funds." Wells Fargo, 990 P.2d at 599 n.4 (citation omitted).

      Here, the plaintiffs brought a claim against the trustee, individually, for breach of its fiduciary duties, yet the trustee has paid for its personal defense of these allegations out Trust assets. Because ONB has not successfully defended these claims of personal liability, the Court finds that, with regard to Count VII of their Complaint, the plaintiffs have shown a strong likelihood of success on the merits.

2. Irreparable Harm

The Court initially denied the plaintiffs' motion because they failed to show that they would be irreparably harmed absent a preliminary injunction. In particular, the Court found an absence of affidavits or testimony identifying an immediate need for the assets and the lack of evidence to show an inadequate remedy at law. However, the circumstances have changed. ONB has notified the Court of an imminent need to sell real property in order to provide continued support to Ruth Salmon and there is also evidence that Mrs. Salmon is in immediate need of that support.

Ruth Salmon, the widow of Dr. James L. Salmon, settlor of the Salmon Trust, is 98 years old and due to a prior stroke and fall, requires 24-hour skilled nursing care, as well as rehabilitative/restorative therapy. (Affidavit and Supplemental Affidavit of Dr. Lucy Crain.) She lives at the Ridgewood Terrace Health Center, but all of her personal belongings remain stored at her Madisonville, Kentucky residence where she lived for over 65 years. (Id.) Prior to being admitted at Ridgewood Terrace, Mrs. Salmon received a monthly disbursement from the Trust in the amount of $9,192. (Id.) After being admitted, the Trust pays the monthly charges for Ridgewood Terrace, totaling $5,730, but no longer provides any additional disbursements to support her. (Id.) Her only other income is monthly Social Security payments of $2,310 which are used to pay for supplemental health insurance and utilities at her Madisonville residence. (Id.) According to Dr. Crain, who is co-power of attorney for Mrs. Salmon, disbursements from the Trust to pay for her care at Ridgewood Terrace and additional disbursements for her other needs are essential to maintain her standard of living. (Id.) Her

other income, particularly, her Social Security income, is simply insufficient to maintain her quality of life. (Id.)

Based upon Dr. Crain's affidavit, the Court finds that there is now sufficient record evidence to conclude that Ruth Salmon is in immediate need of disbursements from the Trust as her personal income and assets are insufficient to meet her living needs. The Court also finds that if the plaintiffs are successful in their claim against ONB for breach of fiduciary duty, an award of money damages with interest against ONB, representing the amount it paid its attorneys to defend this action, will be an inadequate remedy. If these fees are not immediately returned to the Trust, real property that is part of the principal of the Trust will have to be sold in order to provide Mrs. Salmon with her necessary support. (See ONB's Petition for Sale of Real Estate.) According to Dr. Crain, there are four pieces of real estate owned by the Trust that could be sold if the liquid assets of the Trust are depleted: Manitou Farm, Webster County Farm, Pemberton Farm, and Mrs. Salmon's Madisonville residence. (Id.) At least some of these properties, such as the Manitou Farm, have had a history of generating income through the sale of soybean and corn crops in the fall. (Id.) This income along with the approximately $103,000 in attorney's fees that ONB has used to defend this action, might be enough to support Mrs. Salmon throughout the remainder of her life, making the sale of the real property unnecessary. But if any of the properties are sold, the injury to the Trust and its beneficiaries would be irreparable, for "[i]t is settled . . . that a given piece of property is considered to be unique, and its loss is always an irreparable injury." United Church of the Med. Ctr. v. Med. Ctr. Comm'n, 689 F.2d 693, 701 (7th Cir. 1982).

7

ONB argues that the plaintiffs cannot be irreparably harmed by actions that the trustee is authorized to take pursuant to Kentucky law and the Trust instrument. Specifically, the Trust instrument provides that the trustee may "sell, exchange, assign, transfer and convey any security or property, real or personal held in any trust fund, at public or private sale, at such time and price and upon such terms and conditions (including credit) as it may determine." However, if there are sufficient liquid assets in the Trust, there would be no need to sell these pieces of real property, just as they have not been sold for 26 years. Therefore, the Court finds that the Trust and its beneficiaries would be irreparably harmed absent a preliminary injunction ordering the return of the attorney's fees to the Trust pending the resolution of this litigation.

3. Substantial Harm to Others

The third factor in determining whether to issue a preliminary injunction is "whether . . . the injunction would cause substantial harm to others." This factor is most commonly examined in terms of the balance of hardship between the parties. Here, ONB will undoubtedly suffer some hardship if an injunction is issued, as they will be required to wait until they successfully defend the underlying litigation before they will be able to obtain reimbursement for their attorney's fees. Nevertheless, there will be sufficient assets in the trust to cover any attorney's fees that it may accumulate, or, if the possibility arises that the Trust funds will be depleted, ONB may seek modification of the injunction. On the other hand, the irreparable loss of the family home in Madisonville, or the farms owned in part or in whole by the Trust, could create significant hardship on Mrs. Salmon and the other beneficiaries. Overall, the Court finds that this factor weighs in favor of issuing an injunction.

4. Public Interest

Lastly, the Court must determine "whether the public interest would be served by the issuance of the injunction." ONB argues that it would not, as qualified persons or entities may not undertake the role of trustee if they would be required to pay their own attorney's fees during the pendency of any litigation involving trust mismanagement, including frivolous claims. The Court agrees that there is a possibility that litigious beneficiaries could bring claims against trustees in bad faith knowing that the trustee would have to bear its own litigation costs. But this does not mean that there is a large disincentive for qualified persons or entities to act as trustee. Because trusts generally only have a few beneficiaries, "a litigious beneficiary will bear a significant portion of the litigation costs, because if the trustee prevails, litigation expenses will be paid out of the trust property. This creates a disincentive to bring a lawsuit, unless the case for trustee breach seems strong." Melanie B. Leslie, Trusting Trustees: Fiduciary Duties and the Limits of Default Rules, 94 Geo. L.J. 67, 100 (2005) (internal citation omitted). On the other hand, the public is not benefitted by allowing those acting in the capacity of a fiduciary to benefit from their misconduct, even if only temporarily. The Court finds that the need to protect beneficiaries from self-interested trustees outweighs the innocent trustee's need for immediate payment of its attorney's fees. Therefore, the Court finds that this factor weighs in favor of issuing an injunction.

5. Balance of Factors

On balance, the Court finds that each of these factors, individually and collectively, weigh in favor of granting a preliminary injunction.

## III. PETITION TO SELL REAL ESTATE

ONB has sought authorization from the Court to sell one of the four pieces of real property identified above for the purpose of "generat[ing] liquid assets adequate to pay the living and support expenses of Ruth Salmon and trust administration." (ONB's Petition ¶ 23.) Having concluded that ONB must reimburse the Trust for the approximately $103,000 used to pay its attorney's fees to defend this action, thereby providing additional liquid assets for the support of Mrs. Salmon, there is no basis for the Court to grant such authorization.

Furthermore, authorization by the Court for ONB to sell real estate owned by the Trust would violate the terms of the Agreed Order entered on February 5, 2009 [DN 40]. ONB argues that this language in the Agreed Order does not reflect the true intent of the parties that entered into the Release and Indemnification Agreement. They contend that the settlement agreement only prohibits the sale, lease, option, or conveyance of Manitou farm, and then only to Webster County Coal, LLC. But the terms of the Agreed Order are clear and unambiguous. The Agreed Order dismissing paragraphs 67(a) through 68(b) "preclud[ed] the transfer of the Manitou farm or any other Trust asset, by deed, lease or any other means of transfer, during these proceedings."

ONB has filed a motion to rescind or amend the Agreed Order. But unless and until the Agreed Order is rescinded or amended, its provisions are clear. ONB is not permitted to transfer Manitou farm or any other Trust asset during these proceedings, pending further orders of the Court. Therefore, ONB's petition will be denied, rendering moot the plaintiffs' motion to dismiss.

## IV. CONCLUSION AND PRELIMINARY INJUNCTION

Accordingly, **IT IS HEREBY ORDERED** that the motion by the plaintiffs, Ruth R. Salmon, Dr. Lucy S. Crain, Mary S. Templeton, Dr. James L. Salmon, Jr., and Dr. Thaddeus R. Salmon, for reconsideration [DN 122] is **GRANTED**; the Petition by the defendant, Old National Bank d/b/a Old National Trust, for the Sale of Real Estate [DN 110] is **DENIED**; and the motion by the plaintiffs, Ruth R. Salmon, Dr. Lucy S. Crain, Mary S. Templeton, Dr. James L. Salmon, Jr., and Dr. Thaddeus R. Salmon, to dismiss [DN 124] Old National Bank's Petition for the Sale of Real Estate is **DENIED as moot**.

**IT IS FURTHER ORDERED** that the motion by the plaintiffs, Ruth R. Salmon, Dr. Lucy S. Crain, Mary S. Templeton, Dr. James L. Salmon, Jr., and Dr. Thaddeus R. Salmon, for a preliminary injunction [DN 1 Exh 1 and DN 71] is **GRANTED** and the defendant Old National Bank d/b/a Old National Trust is enjoined as follows:

1. Old National Bank d/b/a Old National Trust shall, within ten days, account for all attorney's fees, costs, and expert witness fees that it has paid out of Trusts A and B of the James L. Salmon Trust for the purpose of defending this action since the date this action was filed in the Hopkins Circuit Court;

2. Old National Bank d/b/a Old National Trust shall, within ten days, restore to Trusts A and B of the James L. Salmon Trust all monies identified in its accounting;

3. Old National Bank d/b/a Old National Trust shall make no further transfers from Trusts A and B of the James L. Salmon Trust for the purpose of paying its past, present, or future attorney's fees, costs, and expert witness fees in defense of this action without prior Court

approval;

4. Old National Bank d/b/a Old National Trust is precluded, in accordance with the terms of the Agreed Order entered February 5, 2009 [DN 40], from transferring "Manitou farm or any other Trust asset, by deed, lease or any other means of transfer, during these proceedings" unless and until the provisions of the Agreed Order are rescinded or modified.

5. Having considered Fed. R. Civ. P. 65(c), the Court finds that sufficient security is available to ONB through the remaining real estate assets of both Trusts A and B of the James L. Salmon Trust.

cc: Counsel of Record