# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

**CIVIL ACTION NO.: 4:08CV-116-M**

**RUTH R. SALMON, et al.**                                              **PLAINTIFFS**

**v.**

**OLD NATIONAL BANK d/b/a/ OLD NATIONAL TRUST**                 **DEFENDANT**


## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion by the defendant, Old National Bank d/b/a Old National Trust ("ONB"), for partial summary judgment [DN 95], a motion for an extension of time [DN 156], and a motion to rescind or amend the agreed order entered February 5, 2009 [DN 130]. Also before the Court is a motion by the plaintiffs for partial summary judgment [DN 151], a motion for leave to file a third amended complaint [DN 102] and a motion to bifurcate [DN 127]. Fully briefed, these motions are ripe for decision.

## I.  INTRODUCTION

The plaintiffs, who are the beneficiaries of an inter vivos revocable trust (the "Salmon Trust"), filed this action alleging that ONB, as trustee of that trust, breached certain fiduciary duties owed to trust beneficiaries under Kentucky law. In particular, the plaintiffs allege that ONB, among other things, failed to invest the trust funds like a prudent investor and otherwise took actions that were not in the best interests of the beneficiaries. Based upon these allegations, the plaintiffs seek to surcharge ONB for any losses it caused the beneficiaries ("Fiduciary Duty Claim") and seek to remove ONB as trustee of the trust ("Trustee Removal

Claim").

## II.  SUMMARY JUDGMENT

ONB has moved for partial summary judgment arguing that the plaintiffs' Fiduciary

Duty Claim is barred by the applicable statute of limitations.  The plaintiffs have also moved

for summary judgment on their Trustee Removal Claim.  They argue that they are entitled to

have ONB removed as trustee as a matter of law.

### A.  Standard

In order to grant a motion for summary judgment, the Court must find that the pleadings,

together with the depositions, interrogatories and affidavits, establish that there is no genuine

issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56.  The moving party bears the initial burden of specifying the basis for its motion

and of identifying that portion of the record which demonstrates the absence of a genuine issue

of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party

satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating

a genuine issue of fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the

non-moving party, the non-moving party is required to do more than simply show there is some

"metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 586 (1986).  The Rule requires the non-moving party to present "specific

facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  "The mere existence of a

scintilla of evidence in support of the [non-moving party's] position will be insufficient; there

must be evidence on which the jury could reasonably find for the [non-moving party]."

Anderson, 477 U.S. at 252.

### B. Five-Year Limitations Period Applies to Plaintiffs' Claims But Questions of Fact Preclude Entry of Summary Judgment

When viewing the evidence in the light most favorable to the plaintiffs, they suffered an injury as a result of ONB's negligence beginning in 1999 when ONB changed the trust's investment strategy from 20% technology stocks to 65% or 75% technology stocks. (Wheeler Report at 4, Oct. 28, 2009.) And according to the plaintiffs' expert, the end of the damage period occurred on June 30, 2002. (Id.) However, the plaintiffs did not institute this action until August 7, 2008, more than six years beyond the end of the damage period identified by their expert. (Complaint at 1.) The question that this Court must answer is whether KRS 413.120, which provides a five-year limitations period for "[a]n action for an injury by a trustee to the rights of a beneficiary of a trust[,]" KRS 413.120(6), applies to the plaintiffs Fiduciary Duty Claim.

The answer boils down to whether KRS 413.340 exempts the plaintiffs' claims from the running of this limitations period. Prior to 1998, this provision read:

> *The provisions of this chapter shall not apply to a continuing and subsisting trust*, nor to an action by a vendee of real property in possession to obtain a conveyance.

KRS 413.340 (1992) (emphasis added). The most recent Kentucky Supreme Court case interpreting this provision is First Kentucky Trust Co. v. Christian, 849 S.W.2d 534 (Ky. 1993). In that case, the Court held "that an action against a trustee for breach of fiduciary duty where the trust is continuing and subsisting and no repudiation has occurred may be brought any time

3

during the existence of the trust . . . ." First Ky., 849 S.W.2d at 537. In First Kentucky, like here, the beneficiaries alleged that the trustee breached its fiduciary duties by, among other things, mismanaging trust assets. Id. at 536. The trust, which owned two-thirds of the outstanding stock of a corporation, became the minority shareholder after it failed to purchase convertible debentures allowing the then minority shareholder to obtain 60% of the outstanding stock. Id. at 535-36. The beneficiaries alleged that the trustee "fail[ed] to properly disclose to them the consequences of the purchase of the debentures by [the minority shareholder], by failing to advise them of the available options to block his majority takeover, and by otherwise mismanaging trust assets." Id. at 536. The court concluded that "in an action by beneficiaries against a trustee, the statute of limitations does not begin to run until the trustee repudiates the trust and the beneficiaries have notice of such repudiation." First Kentucky, 849 S.W.2d at 537 (citing Bates v. Bates, 182 Ky. 566, 573, 206 S.W. 800, 803 (1918)). For an action of the trustee to constitute a repudiation, it "must be unequivocal and in violation of the duties of the trust." Id. According to the court, the trustee's alleged breach of its fiduciary duty did not rise to the level of a repudiation. Id. Generally, such repudiation occurs where the trust is terminated or where the trustee withholds or converts trust assets. Id.

The First Kentucky court noted that its facts were distinguishable from Potter v. Conn. Mut. Life Ins. Co., 361 S.W.2d 515 (Ky. 1962), another Kentucky case interpreting this provision. There, the issue before the court was the proper definition of "subsisting trust" as used in this statute. In his will, a husband provided that his estate was to be held in trust for his wife for life, with the remainder to his children in fee. Potter, 361 S.W.2d at 515-16. Upon the

4

death of their mother, the couple's children made a demand for the remaining assets of the

estate.  Id. at 516.  Nevertheless, the trustee, believing that it was to hold the assets in trust for

the benefit of the children, rather than distribute them in fee, only made disbursements of

income to the children.  Id.  The children did not bring suit against the trustee until 17 years had

passed since their mother's death at which point the trustee argued that the claim was barred by

the applicable five year statute of limitations.  Id. at 516.  The children, on the other hand,

argued that the trust was "subsisting" and that pursuant to KRS 413.340, the statute of

limitations did not run against such trusts.

> The Potter court first defined "subsisting trust."
>
> A "subsisting trust" against which limitations do not run is neither more nor less
> than a trust in which the trustee is acting within his powers and the cestui que
> trust has no cause of action against him.

Id. at 516-17 (citation omitted).  The court further explained that "'[t]he trusts intended to be

embraced by the statute, and to be excepted out of the limitation, are those of an exclusively

equitable character, where the trustee has a right to hold the estate, and the cestui que trust has

no right to sue for it.  *Where, however, the latter has a right of action, and forbears to exercise

it*, the letter of our statute, as well as the policy of our law, gives the opposing party the right

to rely upon the lapse of time.'"  Id. at 517 (emphasis added) (quoting Robinson's Comm. v.

Elam's Ex'x, 90 Ky. 300, 303, 14 S.W. 84, 84 (1890)).

Certainly if First Kentucky controls, which involved a similar claim to those asserted by

the plaintiffs, their action would not be barred by the statute of limitations; the Salmon Trust

has not terminated and like First Kentucky, ONB's alleged mismanagement of trust assets does

not amount to a repudiation.  But five years after <u>First Kentucky</u> was decided, the Kentucky

legislature amended KRS 413.340 to read, as it still does today:

> The provisions of this chapter shall not apply to an express trust that is both
> continuing and subsisting, nor to an action by a vendee of real property in
> possession to obtain a conveyance. For purposes of this subsection, a subsisting
> trust is an express trust with respect to which the trustee is acting within its
> powers and *with respect to which no beneficiary has a cause of action against the*
> *trustee*.

KRS 413.340 (2010) (emphasis added); 1998 Ky. Acts 689, ch. 196, § 26.  ONB, of course,

argues that "[t]he legislature's choice of language is clearly intended to avoid the result reached

by the <u>First Kentucky Trust</u> Court."  (Mem. Supp. Mot. Summ. J. at 6.)  Because a cause of

action "'is deemed to accrue in Kentucky where negligence and damages have both

occurred[,]'" (<u>id.</u> (quoting <u>Queensway Fin. Holdings LTD v. Cotton & Allen, P.S.C.</u>, 237

S.W.3d 141, 147 (Ky. 2007),) and because the words and phrases of a statute are to "'be

construed according to the common and approved usage of the language,'" (<u>id.</u> (quoting KRS

446.080),) ONB contends that KRS 413.340 does not exempt the plaintiffs' Fiduciary Duty

Claim from the running of the statute of limitations.  The plaintiffs, on the other hand, argue that

there is a lack of evidence the Kentucky Legislature intended to overrule <u>First Kentucky</u>.

      Not having the benefit of any Kentucky cases construing the statutory amendment to

KRS 413.340, this Court must utilize "all relevant data" to predict how the Kentucky Supreme

Court would resolve this issue.  <u>See</u> <u>Kingsley Assocs., Inc. v. Moll PlastiCrafters, Inc.</u>, 65 F.3d

498, 507 (6th Cir. 1995) (citing <u>Bailey v. V&O Press Co.</u>, 770 F.2d 601, 604 (6th Cir. 1985)).

After carefully reviewing the parties arguments, the relevant case law, and the pertinent

statutory amendments, the Court is convinced that the Kentucky Legislature intended, in light

of the <u>First Kentucky</u> decision, to fix a statute of limitations for claims involving a trustee's

alleged mismanagement of trust assets during the continued existence of the trust.  Significantly,

at the time the legislature amended KRS 413.340, it likewise amended KRS 413.120 to provide

a specific limitations period for "[a]n action for an injury by a trustee to the rights of a

beneficiary of a trust."  1998 Ky. Acts 688-89, ch. 196, § 25.  The purpose of a statute of

limitations is to "limit[] the time in which one may bring suit after the cause of action

accrues[.]" <u>Coslow v. Gen. Elec. Co.</u>, 877 W.W.2d 611, 612 (Ky. 1994) (citation omitted).

They are designed "to prevent the bringing of claims when, due to the passage of time, evidence

is lost, memories have faded and witnesses are unavailable.  Thus, at some point, the right of

a defendant to be free from stale claims, even if meritorious, prevails over the right to prosecute

them."  <u>Alcorn v. Gordon</u>, 762 S.W.2d 809, 812 (Ky. Ct. App. 1988) (citing <u>Armstrong v.

Logsdon</u>, 469 S.W.2d 342 (Ky. 1971).

        If the plaintiffs argument is accepted, this Court would have to conclude that the

Legislature intended to impose a time limit for these types of claims, but that it did not intend

for it to have any effect until the trust is repudiated or terminated, which might not happen until

"evidence is lost, memories have faded and witnesses are unavailable." <u>Id.</u>  This would simply

be directly contrary to the purpose of the limitations period it just enacted.  Instead, the Court

finds that Legislature's intent is best determined by looking to the language of KRS 413.340

which states the obvious: the limitations period against a trustee does not begin to run until any

"beneficiary has a cause of action against the trustee."  KRS 413.340.  As noted by the <u>Potter</u>

court interpreting this same language, "KRS 413.340 has little if any significance.  It says and

means merely that limitations will not run until there is a cause of action." Potter, 361 S.W.2d at 516. And "[s]ince KRS 413.120 defines the period of limitation by reference to the accrual of the cause of action, KRS 413.340 merely gilds the lily." Id. at 517. Here, the plaintiffs admittedly have a cause of action against the trustee based upon ONB's alleged mismanagement of trust assets as they brought this claim against ONB. And the plaintiffs do not dispute that their claim accrued sometime between 1999 and June 30, 2002. It was then that they had a right of action and they were not permitted to forbear to exercise it. Id.; see also KRS 413.340. Absent any tolling of the statute of limitations, the plaintiffs claims would be barred. Here, however, the plaintiffs have raised factual questions regarding the discovery rule, fraudulent concealment, and legal disability each of which would toll the statute. Thus, although the Court agrees with ONB that the five-year limitations period in KRS 413.120(6) applies, it disagrees that the plaintiffs' claims are barred by this statute as a matter of law. Therefore, it will deny ONB's motion.

### C. ONB is not Precluded from Serving as Trustee as a Matter of Law

Under the Salmon Trust instrument as originally drafted in 1973, the grantor, James L. Salmon, selected First Kentucky Trust Company of Louisville to act as trustee. (Trust Agreement at 1.) James Salmon amended the trust in 1978 to remove First Kentucky as trustee and to name Farmers Bank and Trust Company of Madisonville as successor trustee. (Amendment to Trust Agreement at 1.) The trust instrument is silent as to who should act as successor trustee in the event that Farmers Bank was no longer able to serve as trustee.

Subsequently, Farmers Bank was acquired by Old National Bank[1] in the 1980's, but continued to operate under the Farmers Bank name. (John Jason Hawkins Dep. 12:6-10, 13:9-13, June 30, 2009.) In 1995, Farmers Bank became part of Old National Trust Company, a subsidiary of Old National Bank, (DN 161, Ex. B,) until it was ultimately dissolved on October 7, 1999. (DN 161, Ex. C.) The precise point in time at which Farmers Bank's corporate existence ceased to exist, and thus, Farmers Bank no longer had the capacity to serve as trustee, is not entirely clear. Needless to say, it occurred at the earliest in the 1980's when it was acquired by Old National Bank and at the latest on October 7, 1999 when it was ultimately dissolved.

The plaintiffs primarily argue that ONB may not act as successor trustee because it was neither appointed as successor trustee by the terms of the trust instrument nor did it seek judicial approval to act in such a capacity. Relying on the traditional rule which provides that "[i]f a trust is created and the trustee ceases for any reason to be a trustee, a new trustee can be appointed by a proper court[,]" 76 Am. Jur. 2d Trusts § 236 (2010) (footnotes omitted), the plaintiffs argue that ONB can not act as trustee of the Salmon Trust absent such court approval. See also George Gleason Bogert, et al., Bogert's Trusts & Trustees § 531 (2009) (If corporation A merges into corporation B, "corporation B may continue to execute any trusts which it held prior to the merger but it cannot execute any of the trusts held by A until it has been judicially appointed as A's successor."). In fact, Kentucky has adopted a method by which interested persons can seek to have a trustee appointed to administer a trust. See KRS 386.675.

_____

[1] Old National Bank is a national banking association. See Administrator of National Banks, National Banks Active as of 6/30/2010 15 (2010), http://www.occ.treas.gov/foia/Name_St_City.pdf

Nevertheless, the general rule requiring judicial approval of successor trustees only applies "[i]n the absence of controlling statutes or relevant provisions of the trust instrument . . . ." Bogert, supra, § 531. And as Bogert points out, "[i]n nearly all states recent statutes have provided expressly that upon the consolidation or merger of a state bank or trust company with a national bank, the latter shall succeed automatically to any fiduciary positions held by the former." Id.

Kentucky has adopted such a provision. See KRS 386.3-173.[2] KRS 286.3-173, which has remained unchanged since it was adopted in 1952, provides:

> (1)    A state bank may convert into, or merge or consolidate with, a national banking association under the charter of a national banking association in the manner provided by federal law and without approval of any state authority. . . .
> (3)    At the time when such conversion, merger or consolidation becomes effective:
>     (a)    All of the property, rights, powers and franchises of the state bank shall vest in the national banking association and the national banking association shall be subject to and be deemed to have assumed all of the debts, liabilities, obligations and duties of the state bank and to have succeeded to all of its relationships, *fiduciary or otherwise*, as fully and to the same extent as if such property, rights, powers, franchises, debts, liabilities, obligations, duties and relationships had been originally acquired, incurred or entered into by the national banking association;
>     (b)    Any reference to the state bank in any contract, will or document, whether executed or taking effect before or after the conversion, merger or consolidation, *shall be considered a reference to the national banking association if not inconsistent with the other provisions of the contract, will or document*; . . . .

KRS 286.3-173 (emphasis added). That is precisely what happened here. Farmers Bank

---

[2]    The parties focus their attention on KRS 386.3-150 rather than KRS 386.3-173. Although KRS 386.3-150 does generally provide for the legal effect of a bank consolidation, KRS 386.3-173 is more specific and applies precisely to the facts of this case. The Court will therefore not address the applicability of KRS 386.3-150.

merged or consolidated into Old National Bank, a national banking association.  Under such circumstances, ONB is treated as if it were actually the named trustee of the Salmon Trust.  It has the legal authority to act as trustee.

Alternatively, the plaintiffs argue that ONB should be equitably estopped from arguing that it can act as trustee absent the consent of each beneficiary.  They rely upon a letter written by Harold Monroe, an ONB employee that had been managing the Salmon Trust in May of 1995 when the letter was written.  The letter informed Ruth Salmon that the Kentucky Department of Financial Institutions (KDFI) was requiring ONB to obtain consent from each beneficiary before it could continue to act as trustee.  According to Mr. Monroe, he was told by the KDFI that "the Kentucky statutes [do] not provid[e] for the successor trusteeships . . . ." (DN 151, Ex. C.)  Mr. Monroe sought consent from each of the adult beneficiaries.  It is not entirely clear from the record, however, which beneficiaries, if any, provided consent.  In any event, the Court does not find that Mr. Monroe's letter estops ONB from arguing that it has the authority to act as trustee under KRS 286.3-173.  Generally speaking, equitable estoppel only applies "'where a person has, with knowledge of the facts, acted or conducted himself in a particular manner, or asserted a particular claim, title, or right, [and] afterward assume[s] a position inconsistent with such act, claim, or conduct *to the prejudice of another who has acted in reliance on such conduct or representations*.'" Laughead v. Commonwealth, 657 S.W.2d 228, 230 (Ky. 1983) (emphasis added) (quotation omitted).  Stated another way, the essential elements of equitable estoppel are:

> (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are

otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. And, broadly speaking, as related to the party claiming the estoppel, the essential elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) *reliance*, in good faith, upon the conduct or statements of the party to be estopped; and (3) *action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice*.

Weiand v. Bd. of Trs. of Ky. Ret. Sys., 25 S.W.3d 88, 91 (Ky. 2000) (quoting Elec & Water Plant Bd. v. Suburban Acres Dev., Inc., 513 S.W.2d 489, 491 (Ky. 1974)).  Here, there is no evidence that the plaintiffs relied upon Mr. Monroe's statements, and certainly not to their injury, detriment, or prejudice.  If ONB had the authority to act as trustee under Kentucky law without prior judicial approval or beneficiary consent, it does not appear that the plaintiffs would be injured if ONB took the extra step of obtaining consent from each beneficiary, and it certainly does not rise to the level of unconscionability.  (Plas.' Reply at 12 n.5 (arguing that detrimental reliance is not required if ONB's conduct was unconscionable).)  Therefore, the Court finds that equitable estoppel is simply not applicable here and the Court will deny the plaintiffs' motion for summary judgment.

## III.  AGREED ORDER

ONB has moved to rescind or amend the Agreed Order that was entered on February 5, 2009.  In its entirety, that Agreed Order provides:

> This Cause having come before the Court upon the joint Motion of the initial Plaintiffs, the Salmon Beneficiaries, and the Defendant, Old National Bank, d/b/a Old National Trust, in compliance with the terms of a written limited settlement agreement entered into between the Salmon Beneficiaries and Old National Bank d/b/a Old National Trust, to voluntarily dismiss without prejudice,

those claims pled by the initial Plaintiffs, prior to realignment of the parties, as alleged in Numerical Paragraphs 67(a), through 68(b) of the November 6, 2008, Second Amended Complaint. Pursuant to the terms of the limited settlement agreement and the joint motion of the parties and for good cause shown;

IT IS HEREBY ORDERED AND ADJUDGED that Numerical Paragraphs 67(a) through 68(b) of the Plaintiffs' Second Amended Complaint, shall be dismissed without prejudice, subject to the Court's authority to enforce the terms of that limited settlement agreement, thereby precluding the transfer of the Manitou farm or any other Trust asset, by deed, lease or any other means of transfer, during these proceedings.

(DN 40.) In addition to this document being signed by the Court, it was also signed by the attorneys for both parties.

The problem with the Agreed Order is that it contains terms that are inconsistent with the parties' settlement agreement referenced in the Order. For example, the Order provides that all transfers of trust assets, Manitou farm, or otherwise, are prohibited. But when reviewing the Release and Indemnification Agreement, it provides that "during the pendency of the above referenced lawsuit [ONB] shall not on behalf of the Trusts execute any lease, option or conveyance *with Webster County Coal, LLC* or any of its affiliates or assigns thereby encumbering any *real estate* currently held in the Trusts, including the Manitou farm." (R&I Agmt. ¶ 3 (emphasis added).) Thus, only the transfer of real estate to Webster County Coal, LLC is prohibited by the terms of the Agreement, whereas the sale or transfer of *all* trust assets to *any* party is prohibited by the terms of the Agreed Order. The restrictions imposed upon ONB through this Agreed Order are significantly more onerous than are the restrictions imposed upon ONB under the Release and Indemnification Agreement.

It is well settled that the Court has the power to relieve a party from an order for "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). This Rule is

intended to provide relief "(1) when a party has made an excusable mistake or an attorney has acted without authority, or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order." United States v. Reyes, 307 F.3d 451, 455 (6th Cir. 2002) (citation omitted). Additionally, a settlement agreement may be reformed where it "'is tainted with invalidity, either by fraud practiced upon him or by a *mutual mistake* under which *both parties acted*.'" Brown v. County of Genesee, 872 F.2d 169, 174 (6th Cir. 1989) (quoting Callen v. Pa. R.R. Co., 332 U.S. 625, 630 (1948)) (emphasis in original). Here, it is clear that the intent of the parties was to give the Court jurisdiction to enforce the terms of the settlement agreement and that through mistake or inadvertence, the terms of the agreement were not properly incorporated into the Agreed Order. Under these circumstances, the Court finds that it is proper under Rule 60(b)(1) to vacate the Agreed Order and enter a new order that is consistent with the parties' Release and Indemnification Agreement.

Alternatively, the plaintiffs argue that this issue is moot because there is no immediate need for ONB to sell property to provide for the care and support of Ruth Salmon. Although ONB may not have an immediate need to sell property to provide for Ruth Salmon's support, the Court does not find that this issue is moot. A matter is moot only when "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000) (quotation omitted). Here, the controversy is live because ONB is currently subject to the injunctive provisions of the Agreed Order and is seeking relief from those injunctive provisions. Therefore, the Court will grant ONB's motion to amend the Agreed Order.

## IV.  AMENDED COMPLAINT

Pursuant to Fed. R. Civ. P. 15(a)(2), the plaintiffs request leave to file a third-amended complaint.  They seek to add a claim for fraud based upon ONB's nondisclosure of certain internal audits that would have revealed ONB's improper investment strategy.  They also seek to add a claim for gross negligence as a basis for imposing punitive damages.  ONB objects, arguing that almost two years have passed since the plaintiffs originally filed their claim in the Hopkins Circuit Court, and that they are now seeking to amend their complaint to add significantly different claims to the complaint.  They also point out that by Court order, all motions to amend pleadings were to be filed no later than August 3, 2009.

Because the plaintiffs seek leave to amend their complaint after the deadline imposed by the Court's Scheduling Order has passed, (DN 45,) the plaintiffs must first show good cause for modifying the Scheduling Order before the Court will consider whether such amendment is proper under Fed. R. Civ. P. 15(a)(2).  Fed. R. Civ. P. 16(b)(4); see also Leary v. Daeschner, 349 F.3d 888, 909 (6th Cir. 2003) ("Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a).").  In assessing whether good cause has been shown, the Court must consider two factors.  First, the Court must measure "the movant's 'diligence in attempting to meet the case management order's requirements.'" Id. (quoting Inge v. Rock Fin. Corp., 281 F.3d 613, 625 (6th Cir. 2002)).  Second, the Court must consider "whether the opposing party will suffer prejudice by virtue of the amendment." Id. (citing Inge, 281 F.3d at 625).

The Court finds that the plaintiffs have sufficiently shown good cause so as to permit the amendment of the Scheduling Order. They diligently sought information regarding their claims through discovery, yet they did not receive a copy of these internal audits until September 2009, one month after the amended pleading deadline. The plaintiffs sought further discovery related to their nondisclosure claim on February 23, 2010 when they deposed Steven Keck, a former ONB employee. Steven Keck testified that the internal audits were never disclosed to the plaintiffs. The plaintiffs sought leave to amend their complaint six days later. Based upon these facts, the Court finds that the plaintiffs were diligent in attempting to meet the deadline imposed by the Scheduling Order. Nevertheless, ONB has made some showing of prejudice. They note that a majority of the witnesses have already been deposed and two dispositive motions have been filed in this case. See Duggins v. Steak 'N Shake, Inc., 195 F.3d 828, 834 (6th Cir. 1999) (district court did not abuse its discretion in concluding that defendant would be substantially prejudiced by the filing of an amended complaint where the time for discovery and dispositive motions had passed and a summary judgment motion had been filed). But the Court does not find that this prejudice is substantial. Unlike Duggins, discovery, here, is not yet closed. And furthermore, H.C., a minor amended his complaint wherein he asserted a claim based upon nondisclosure of these same internal audits. (DN 120.) As ONB will be required to defend these same claims asserted by H.C., it will not be substantially prejudiced by also defending the claims asserted by the other beneficiaries.

The Court also finds that leave to amend the plaintiffs' complaint should be granted under Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason—such as

16

undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" Leary, 349 F.3d at 905. There does not appear to be any evidence of undue delay, bad faith, or dilatory motive on the part of the plaintiffs. And as already discussed, ONB will not suffer substantial prejudice by permitting the plaintiffs to assert these new claims. Although ONB does argue that the plaintiffs claims are futile under Kentucky law, the Court is not in a position to make that determination based upon the facts currently before the Court. The Court will therefore permit the plaintiffs to amend their complaint.

## V.  BIFURCATION

The plaintiffs have also sought to bifurcate their Trustee Removal Claim from their other claims arguing that ONB should be removed as trustee of the Salmon Trust immediately. They contend that the Trustee Removal Claim can be tried while discovery related to the other claims is still ongoing. ONB objects arguing that judicial economy will not be promoted through multiple trials. The Court agrees with ONB. Fed. R. Civ. P. 42 gives the district courts discretion to "order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims" when doing so "[f]or convenience, to avoid prejudice, or to expedite and economize . . . ." Fed. R. Civ. P. 42(b). Before a court may order separate trials it "must consider several issues such as potential prejudice to the parties, potential confusion to the jury, and the relative convenience and economy which would result." In re

17

<u>Beverly Hills Fire Litigation</u>, 695 F.2d 207, 216 (6th Cir. 1982) (citation omitted).

Here, the facts related to the plaintiffs' Trustee Removal Claim and their Fiduciary Duty Claim overlap. In fact, it is the way in which ONB invested the Salmon Trust funds and handled the other trust property which gave rise to the animosity which they now claim requires ONB to be removed as trustee. Despite the plaintiffs assertions to the contrary, multiple trials will require the same facts to be tried in two separate proceedings. Furthermore, even if the facts were not overlapping, the Court would not find sufficient justification for separate trials. The judicial resources that would be expended in having separate trials would simply not overcome the plaintiffs request to have the Trustee Removal Claim expedited. Therefore, the Court will deny the plaintiffs' motion to bifurcate.

## VI. EXTENSION OF TIME

ONB has requested an extension of time in which to file its response to the plaintiffs' motion for summary judgment. The plaintiffs have not objected. Therefore, the Court will grant ONB's motion.

## VII. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** as follows:

1.      The motion by the defendant, Old National Bank d/b/a Old National Trust, for partial summary judgment [DN 95], the motion by the plaintiffs for partial summary judgment [DN 151], and motion by the plaintiffs to bifurcate [DN 127] are each **DENIED**;

2.      The motion by the defendant, Old National Bank, for an extension of time [DN 156] is **GRANTED**. Old National Bank's response [DN 161] to the plaintiffs' motion for

summary judgment shall be deemed timely filed;

3.    The motion by the defendant to rescind or amend the Agreed Order entered February 5, 2009 [DN 130] is **GRANTED**.  The Agreed Order entered February 5, 2009, is **HEREBY VACATED**.  The Court will enter a new Order consistent with this Memorandum Opinion; and

4.    The motion by the plaintiff to file a third amended complaint [DN 102] is **GRANTED**.  The clerk is directed to file the amended complaint tendered with the plaintiffs' motion.

cc:    Counsel of Record