**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION**

**CIVIL ACTION NO. 4:08-CV-00116-JHM**

**RUTH R. SALMON, et al.**                                                                    **PLAINTIFFS**

**V.**

**OLD NATIONAL BANK d/b/a OLD NATIONAL TRUST**              **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Summary Judgment [DN 197], Plaintiffs' Motion for a Hearing [DN 216] and Defendant's Amended Motion for Extension of Time to Reply to Plaintiffs' Motion for Summary Judgment [DN 211]. These matters are ripe for decision.

**I. BACKGROUND**

This matter is an action by the beneficiaries of the Dr. James L. Salmon Trust A and Trust B ("Trusts") to remove Old National Bank d/b/a Old National Trust ("ONB") as Successor Trustee. The Trusts were executed in 1973 and then amended in 1978 by Dr. James L. Salmon to provide for his wife Ruth Salmon, their children, and their lineal descendants. While Dr. Salmon had originally appointed First Kentucky Trust Company of Louisville as Trustee, in 1978 he modified the Trusts to appoint a local Madisonville bank, Farmers Bank and Trust Company of Madisonville, as Successor Trustee. Dr. James Salmon passed away in 1986, and Farmers Bank began making discretionary distributions for the care, maintenance, and support of his wife Ruth R. Salmon. Through a series of mergers and acquisitions, Farmers Bank and Trust Company became a part of ONB. ONB as Successor Trustee, continued to make those distributions and to maintain a trust officer responsible for the Salmon Trusts in Madisonville.

In 2001, the trust officer for the Salmon Trusts, Jason Hawkins, was relocated to Evansville, Indiana. In 2006, Hawkins was replaced by Ruth Stonecipher and Shannon Marshall. Ms. Stonecipher became the Trust administrator for the Salmon Trusts and Ms. Marshall became the Client Advisor. The Trusts' assets at the time of the transfer included four real estate properties: (1) Mrs. Salmon's home, located in Madisonville, Kentucky; (2) a farm located in Anton, Kentucky; (3) a farm located in Manitou, Kentucky; and (4) and a farm located in Webster County Kentucky. Unlike Mr. Hawkins, neither Ms. Stonecipher nor Ms. Marshall had any experience managing farming properties. Therefore, the decision was made to hire a farm manager to help oversee the properties. Brian Neville was hired shortly thereafter as the farm manager for the Anton and Manitou farms. However, his residence and his office are located in Danville, Illinois, approximately 200 miles from Madisonville. Mr. Neville visited each of those two farms approximately four times a year, but otherwise managed them from Illinois.

Mr. Neville was not employed to manage the Webster County Farm because that land had not been used as prime farmland since 1986 when it was leased to a coal company to be strip mined. The mineral lease for the 175 acre farm required that the coal company reclaim the property after the cessation of mining activity. Before the farm can be returned to prime farmland, it must have the bond against it released. The third and final phase prior to bond release requires that the farm land produce at least three years of crops that meet the state established minimum yield for that crop. The final phase of the reclamation process began in approximately 2004 with the planting of a hay crop on 75 acres of the Webster County Farm. However, following the harvesting of the first hay crop, no information regarding the yield was ever submitted to the Kentucky government to satisfy the requirements for reclamation. Instead, more hay was planted and harvested without any

information being submitted in an attempt to get the bond on the property released. It was not until a meeting in 2008 between members of ONB and Hopkins County Coal that the final phase of the reclamation process was truly undertaken in an effort to have the bond on the property released.[1]

Since approximately 1999, the Successor Trustee, ONB, has been making substantial distributions for Mrs. Salmon's health, care and maintenance as the result of a stroke Mrs. Salmon suffered. Mrs. Salmon's recovery from the stroke required long periods of in-patient and out-patient rehabilitation, and eventually around-the-clock care. As a result of these distributions, the only assets within the Trusts as of May 2011 were the real estate properties and approximately $7,000.

Mrs. Salmon passed away on July 15, 2011. Her will was probated in the Hopkins District Court on July 20, 2011. In that will, Mrs. Salmon exercised a general power of appointment, granted her under the Trust Agreement, to terminate Trust A. Furthermore, under the Trust Agreement, upon Mrs. Salmon's death, Trust B is to be divided by the Trustee into separate equal trusts for each of the Salmons' children. It is Plaintiff Beneficiaries' position that since the death of Mrs. Salmon, and her exercise of her general power of appointment to terminate Trust A, that Trust A has been fully terminated. Plaintiffs further contend that Trust B has been terminated as well, and that all that remains now is to form separate trusts for the grantor's children from the assets of Trust B. Plaintiffs contend, however, that ONB should have nothing to do with the formation of the separate trusts because it should be removed "for cause" as Successor Trustee.

---

[1] Only 75 acres of the Webster County Farm were farmed in this manner because only 75 acres were actually strip mined and subject to the reclamation process. The other 100 acres were never mined and, therefore, do not require reclamation to be used as prime farmland by the Trust. (Pls.' Mot. Partial Summ. J. [DN 197], Ex. E, Harris Dep. 8:1-20.) However, because the 100 acres have not been used as prime farmland during the many years that active mining was taking place, cedar trees and other impediments have been allowed to grow up on that land making it unsuitable for farming.

## II. DISCUSSION

While Plaintiffs title their motion as one for summary judgment, throughout their briefs they continuously cite legal precedent for the proposition that the decision to remove a trustee is one that is firmly within the Court's discretion. The Court agrees that this is a matter that is within its discretion and not one subject to the summary judgment standard. See Wilson v. Smoot, 216 S.W. 129, 132 (Ky. 1919) ("What constitutes a sufficient reason for removing a trustee is a matter peculiarly within the discretion of the court, which should be guided by considerations of the welfare of the beneficiaries and of the trust estate.") (internal quotation marks omitted).

Under Kentucky law, "[j]udicial proceedings may be initiated by interested persons . . . to [a]ppoint or remove a trustee[.]" Ky. Rev. Stat. Ann. § 386.675(1)(a). A trustee may be removed by a court "for cause" when the trustee's "continuation in that role would be detrimental to the interests of the beneficiaries." Restatement (Third) of Trusts § 37 cmt. d (2003). Possible grounds for such a removal include gross or continued inadequacies in matters of investment; changes in the place of trust administration; or friction between the trustee and the beneficiaries. Id. § 37 cmts. e, e(1); see also Smallwood v. Lawson, 208 S.W. 808, 810 (Ky. 1919) ("[I]f anything interferes to prevent a just and proper discharge of the trust or fiducial duties of the trustee, or the trust is not being properly conducted, or by reason of hostility between the trustor and the trustee the court should be convinced that a change in trustees would be advisable, this can be done.")

Plaintiffs advance several arguments regarding why ONB should be removed as Successor Trustee. The most convincing argument is that the relationship between the Trustee and Beneficiaries has deteriorated to the point that it is detrimental to the efficient administration of the

4

Trusts. The Supreme Court in May v. May, found that

> [t]he power of a court of equity to remove a trustee, and to substitute another in his place, is incidental to its paramount duty to see that trusts are properly executed, and may properly be exercised whenever such a state of mutual ill feeling, growing out of his behavior, exists between the trustees, or between the trustee in question and the beneficiaries, that his continuance in office would be detrimental to the execution of the trust, even if for no other reason than that human infirmity would prevent the co-trustee or the beneficiaries from working in harmony with him, and although charges of misconduct against him are either not made out, or are greatly exaggerated.

167 U.S. 310, 320-21 (1897). The focus of the Court in such cases must be the harm visited upon the trust by the friction or hostility.

Plaintiffs argue that they have lost trust in ONB's ability to effectively manage and administer the Trusts. As proof of this lack of trust, Plaintiff's cite to the management of the Webster County Farm. The evidence before the Court demonstrates that the Webster County Farm likely could have been returned to full crop production in 2008. It appears that the 100 acres of unmined farmland could have been returned to crop production even earlier but for the growth of trees and brush throughout the farmland. When Mr. Lee Harris of Hopkins County Coal was questioned as to why the crop production phase of the reclamation process had not been undertaken before 2008 he simply said "[i]t just slipped through the crack. It -- we weren't pursuing bond release and so we really just -- didn't do it." (Pls.' Mot. Partial Summ. J. [DN 197], Ex. E, Harris Dep. 8:1-20.) Defendant ONB has offered no reason why the reclamation for the Webster County Farm was not begun sooner or followed more closely.[2]

Plaintiffs argue that along with their distrust of ONB's abilities, that there is also a severe

---

[2] This failure is even more egregious considering that royalty payments from the mining of the Webster County Farm had stopped in 2000, indicating that the mining phase of the lease had ended.

atmosphere of hostility between themselves and ONB. The Court agrees. Evidence of this hostility can be found throughout the record. For instance, Dr. Lucy S. Crain cited in her deposition the hostility created by the response of an ONB employee who was questioned about the investment strategy of the Trusts during a meeting in 2006. Crain Depo. 16-17. There is also evidence that hostility between the parties exists as a result of ONB's lack of knowledge regarding Mrs. Salmon's medical condition and need for around-the-clock care following her 1999 stroke, as well as ONB's general inaccessibility. Id. at 17.

Another issue that has caused considerable friction is the removal of the trust administration from Madisonville to Evansville and Danville. In 1995, at the time that Farmers Bank & Trust Company came under the control of ONB, a letter was issued to the Beneficiaries of the Trusts by the Vice-President of Farmers Bank. The letter stated that "[w]e want to stress to you that your account will continue to be managed and maintained here at Farmers Bank. We will continue to reside and work here at Farmers." Pls.' Mot. Partial Summ. J. [DN 151], Ex. C, Letter From Farmers Bank dated May 19, 1995. Dr. Crain testified that

> As I understood Mr. Monroe's letter, nothing was going to change about the relationship my family had with Farmers Bank, except the name of the company.
> As it turned out, that was not the case. In particular, when Old National Bank apparently took over the management of the Trusts, there was already a deteriorating relationship, which has culminated in this litigation and in a lawsuit filed in the year 2000 in the Hopkins Circuit Court by Old National Bank against the Trust beneficiaries.

Pls.' Mot. Partial Summ. J. [DN 151], Ex. G, Aff. of Lucy S. Crain, ¶ 3-4.

The hostility between the Beneficiaries and ONB is further evidenced through a series of letters and emails between the parties' respective counsel regarding the Salmon family home and the monthly distributions for Mrs. Ruth R. Salmon. ONB, through its counsel, informed the

beneficiaries that it intended to reduce the distributions for Mrs. Salmon and to place "one or more of the real property assets up for auction[,]" even though the Beneficiaries specifically requested that the properties not be sold.  Pls.' Mot. for Reconsideration [DN 122], Ex. Supp. Aff. Lucy Crain, Letter to Daniel Thomas dated March 19, 2010.  The letter further stated that the Trust was changing the locks on the Salmon family residence in seven days and that the beneficiaries must remove all personal belongings from the Salmon home by that time.  Id.

The beneficiaries response to ONB, through their own counsel, demonstrates the perceived hostility.  The Beneficiaries' response begins by stating that they "find the contents of the Trustee's position in reference to Mrs. Ruth R. Salmon . . . to be highly insulting."  Pls.' Mot. for Reconsideration [DN 122], Ex. Supp. Aff. Lucy Crain, Letter to Chad Sullivan dated March 24, 2010.  The letter further characterizes ONB's actions regarding the changing of the locks as a "threat . . . made to induce the release of ONB from the beneficiaries' claims[.]"  Id.  It continues on stating that Dr. Crain has made an offer to "schedule an appointment for Ms. Marshall to make a *non-adversarial visit* to Mrs. Salmon's home[.]"  Id. (emphasis added).  This is not the type of exchange nor the type of language that demonstrates a healthy and civil relationship between a trustee and beneficiaries.  These letters demonstrate a constant questioning of, and opposition to, many of the Trustee's actions related to the administration of the Trusts, which is preventing the efficient administration of the Trusts.[3]

The Court finds that the presence of severe hostility and the lack of trust in ONB as Successor Trustee warrant removing ONB as Trustee.  The Beneficiaries have suggested that

---

[3] It is noteworthy that this is the second lawsuit filed between ONB and the Beneficiaries, and that the first suit was actually filed by ONB.

7

Planters Bank located in Hopkinsville, Kentucky, be appointed Successor Trustee after the removal of ONB.  Scott C. Hancock, a Senior Vice-President and Trust Officer at Planters Bank, has submitted an affidavit stating that Planters Bank is ready and willing to become the Successor Trustee.  Therefore, the Court **GRANTS** Plaintiffs' Motion and removes ONB as Successor Trustee pursuant to K.R.S. § 386.675(1)(a).  Furthermore, the Court appoints Planters Bank located at 1312 South Main Street, Hopkinsville, Kentucky, as Successor Trustee.

Although there is a pending motion by Defendant ONB for an extension of time to Reply to Plaintiffs' Motion to remove ONB as Successor Trustee, the Court finds that ONB has already filed its Response to Plaintiffs' Motion.  Therefore, to the extent that ONB's Response was filed late, the Court **GRANTS** ONB's Motion for extension of time to reply, and deems ONB's Response timely.

The Court further finds that a hearing on this matter is unnecessary and **DENIES** Plaintiffs' motion for such a hearing as moot.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment [DN 197] is **GRANTED**.  ONB is hereby ordered to wind up its administration of the Trusts within 30 days of the filing of this order including, signing any necessary deeds to transfer the assets of the Trusts, and producing the physical Trust files.

**IT IS FURTHER ORDERED** that Planters Bank located at 1312 South Main Street, Hopkinsville, Kentucky, is appointed Successor Trustee.

**FURTHER** that Defendants' Amended Motion for Extension of Time to Reply to Plaintiffs' Motion for Summary Judgment [DN 211] is **GRANTED** so as to make Defendant's Response timely.

**FURTHER** that Plaintiffs' Motion for a Hearing [DN 216] is **DENIED** as moot.

cc: counsel of record